UNITED STATES of America

v.

**Daphne W. ESSEX, Appellant.**

**No. 83–1169.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1983.

Decided May 11, 1984.

Ronald A. Goodbread, Washington, D.C. (appointed by this Court), for appellant.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), Michael W. Farrell, John R. Fisher and William J. O'Malley, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

* The abbreviation "Tr." refers to the transcript; "R.," to the Court's record file; and "J.A.," to the Joint Appendix.

1. Contrary to the assertion of the dissent, our holding in this case cannot be considered any change in the law. As this opinion explains, *infra,* the dissent consistently ignores (1) the provision of the stipulation that the waiver of the 12-person jury was conditional on some-

Before WILKEY and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

Dissenting opinion filed by Circuit Judge WILKEY.

MacKINNON, Senior Circuit Judge: *

Appellant Daphne Essex appeals her conviction for possession of heroin with intent to distribute. 21 U.S.C. § 841(a). At the start of the trial, the defense stipulated to proceeding with a jury of 11 if it became necessary to do so. But a full jury heard all the evidence, began deliberations, and adjourned over the weekend. One juror failed to appear on Monday morning and the court—*without finding that there was any reason for excusing him, and over defense objection*—permitted the 11 remaining jurors to continue deliberations and to return a verdict.

The government admits the defendant objected that it was "not *proven* necessary" to continue without the juror and that the court overruled said objection. Since there was no *finding* of any reason that it was "necessary" to proceed with less than a full jury, the denial of the defendant's right to a unanimous verdict of the 12 jurors constituted (1) an obvious violation of the terms of the stipulation, and (2) a violation of Fed.R.Crim.P. 23(b) and 31(a). Even assuming the error was not properly raised before the district court, we would find this procedure to be a *defect affecting appellant's substantial right* and reviewable under the so-called "plain error" rule, Fed.R.Crim.P. 52(b). We accordingly reverse.[1]

thing *happening* to a juror, (2) the fact that there was a complete absence of any "finding" by the court, and (3) that part of Rule 52(b) (the so-called plain error rule) that "defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

## I. FACTS

Shortly after the jury was selected, a juror who had been stricken peremptorily by the defense was accidentally seated among the 12 jurors. Only one alternate had been selected; the rest of those examined on *voir dire* had been dismissed. The improper seating was discovered before the trial started, and the following exchange then occurred:

THE COURT: Mr. Goodbread, I understand that the Government is willing to accept alternate No. One in place of No. 12, and that's agreeable to you, is it?

MR. GOODBREAD [Appellant's Counsel]: It is, your Honor.

THE COURT: That means we proceed without an alternate and it is understood that *in the event we should have anything happen to one of them, they are unable to come*, if it is not less than one juror you are willing to proceed with 11?

MR. GOODBREAD: That's correct, your Honor.

THE COURT: That's agreeable to your client?

THE DEFENDANT: Yes.

THE COURT: Very well. Is it agreeable to the Government?

MR. O'MALLEY [Government Counsel]: It is agreeable to the Government, your Honor, but this is an issue which, as the court well knows, has been litigated many times.

If we could have a formal waiver from Miss Essex, that is, to indicate that she has been advised that she has an absolute right to have 12 jurors and that if she waives it she waives any right to appeal that issue, and she must be satisfied with a verdict of 11.

THE COURT: Do you understand, Miss Essex, that you are entitled to a jury of 12 and you wouldn't [sic] certainly have it if we had it. At the moment you are going to have 12.

*I am just saying that in the event something should happen to one of them,* we don't have any alternates.

THE DEFENDANT: Yes, Ma'am.

THE COURT: *So if something should happen to one,* we would proceed with 11. Is that your understanding and you agree to that?

THE DEFENDANT: Yes, Ma'am, I do.

THE COURT: Very well.

(Tr. 42–43) .(emphasis added). Thereupon, the previously stricken juror was dismissed and replaced by the sole alternate.

The case proceeded to trial. None of the jurors was excused during the trial phase. The parties rested on a Friday and the jury retired to deliberate. The jurors deliberated until about 6:00 p.m., when they were given the option to continue deliberations during the evening or to return Monday morning. They voted to return on Monday. In excusing them, to return at 9:30 on Monday morning, the Court said to counsel: "It will not be necessary for you to be here at 9:30 on Monday. The clerk will check them in when they are *all* here and they will continue with their deliberations" (Tr. 394) (emphasis added).

On Monday, only 11 of the 12 jurors appeared at 9:30. Appellant's counsel, notified of the situation by telephone, immediately objected to allowing the jury to proceed. No record was made of the objection that counsel was called upon to make—by *telephone*—first to the court's secretary, and then to the judge personally. The trial judge, over such defense objection, construed appellant's oral stipulation as sufficient to cover the situation and directed the jury to resume its deliberations with only 11 jurors. So far as the record indicates, the court made no investigation regarding the missing juror and did not determine the reason for the juror's failure to appear.

### A. *The Government's Concession*

We are not completely handicapped by a silent record, however, because appellant's contemporaneous objections are explained in her brief, and the Government in *its* brief concedes their correctness:

As explained in her brief, appellant's counsel, who was at an administrative hearing, communicated his objections to

accepting a verdict from eleven jurors in a telephone conversation with the trial judge. Brief for Appellant at 7–8. The contents of that call are not a part of the record on appeal, but *for the purposes of this appeal we credit appellant's representations that her counsel objected to accepting a verdict of less than twelve jurors.* Just *before* the verdict was returned, appellant's counsel noted for the record his objection to accepting a verdict from eleven rather than twelve jurors (Tr. 397).

Brief for Government at 7 n. 3 (emphasis added).

The contemporaneous objections "communicated [to] the trial judge," *id.,* as "explained in [appellant's] brief" that the government "credits" are set forth in the margin.[2] The specific admission by the Government in its brief is important. It concedes that appellant contemporaneously objected "[a]s *explained in her brief.*" This concession thus admits that counsel

objected to the Court's ruling on the ground that it would deprive appellant of her right that her "conviction [be achieved] by *unanimity* of those jurors who actually heard and deliberated the case." The Government's concession also admits that counsel objected to the court's proceeding with only 11 jurors on the ground that the stipulation only agreed to 11 jurors *"if necessary,"* and "[t]hat turned out *not to be necessary"* (emphasis added). Appellant also asserted that such procedure was *not* "proven necessary." Despite these timely objections, the court ruled that the 11 remaining jurors could continue their deliberations on the ground that there was "no difference" in whether the juror's absence was proven necessary or *not* proven necessary. The dissent essentially takes the same position. The 11 jurors returned a unanimous verdict of guilty, and defense counsel again objected to the jury procedure.[3] He alluded to the issue again in his motion for new trial.[4]

2. The Court's secretary stated [to defense counsel on the telephone] that she was informed by the Court that it was understood that the Defendant had no objection to proceeding with only eleven jurors.

Counsel [for defendant] then informed Chambers that such was not the understanding or the agreement. Rather, what the Defendant had agreed to was to proceed to trial, *if necessary,* with eleven jurors. That turned out *not to be necessary,* since the case had been heard for two days by twelve jurors, all of whom had retired and invested nearly two hours of deliberation in the case. *Counsel expressed opposition* to proceeding with eleven jurors under these changed and different circumstances, stating the opinion that the Government should be required to convince all of the jurors it had attempted to persuade (however many that may have been—twelve in this case, as usual) and that to allow the panel to be whittled away by exigencies and circumstances would geometrically lighten the Government's burden to achieve conviction by *unanimity* of those jurors who actually heard and deliberated the case. [*This is a plain objection to lack of unanimity.*] Counsel *further* expressed the opinion that the agreement concerning and the matter of the alternate juror was academic and moot at that point, since the alternate juror would have been excused before the jury had retired to begin its deliberations anyway, and would have had no part to play had a juror failed to appear to resume deliberations. On those grounds, Counsel objected to proceeding with only eleven jurors after deliberations had be-

gun. [This separate objection was based on counsel's construction of the stipulation.]

⁂ ⁂ ⁂ ⁂ ⁂

In counsel's subsequent [continuation of the telephone] conversation with [the judge], he repeated the foregoing contentions and expressed *further opposition* to the case proceeding without the twelfth juror present. [The judge] took the position at that point, however, that Counsel and Defendant had earlier agreed on the record to proceed with only eleven jurors. [This abbreviated description of the stipulation ignored the pre-conditions for a jury of 11.] When informed of Counsel's distinction between an earlier stated agreement to proceed to trial (*if proven necessary*) with eleven jurors and a subsequent requested agreement to allow only eleven of the twelve who had heard the case to then decide it (*not proven necessary*), [the judge] expressed the opinion that there was *no difference* in the fact situations. Stating that she did not know any other way to proceed, [the judge] then informed Counsel that she would allow the eleven jurors to proceed with deliberating the case. Counsel *restated his position on the phone* and requested [the judge's] understanding. (R. 19–6).

Brief for Appellant at 6–8 (emphasis added).

3. When the jury was ready to return a verdict at 11:22 a.m. on Monday morning, defense counsel entered the following objection:

THE COURT: You may bring in the jury.

It does not appear from the record that either appellant or the Government requested the court to try and locate the missing juror—or that the court ever attempted to locate him or determine the reason for his absence. The parties stated at oral argument that, so far as they knew, the reason for the missing juror's absence was *never* determined. The transcript does not indicate that the court ever ruled on the objection it took under advisement (Tr. 400–01).

> MR. GOODBREAD: Your Honor, *before* we bring in the jury, may I enter into the record my understanding of the 11-juror situation?
> THE COURT: Surely.
> MR. GOODBREAD: I haven't inquired of the Government what his position is.
> For the Record, the Defense understanding on the agreement to proceed with 11 jurors was, on the first day of the trial, when we used up the alternate, if the full 12 did not return the next day, we would proceed through trial with 11 jurors.
> The record shows all 12 did show up, all 12 did hear the case.
> My understanding is the court dutifully informed me, by telephone, this morning only 11 showed up for the resumed deliberations.
> It was not the defense's understanding that we would agree to go forward with only 11 jurors during the deliberations.
> I just wanted to enter that on the record, if the court please.
> THE COURT: Very well.
>
> \* \* \* \* \* \*
>
> [The jury then returned with a verdict of guilty.]
> MR. GOODBREAD: If it please the court, we would have two motions.
> We would ask for a mistrial *on the ground that an insufficient panel was present, after 12 jurors had retired, as we placed on the record earlier.*
> The record will show only 11 jurors present and that's clearly improper judicial proceedings in a situation of this nature.
> It's our position that the excusing of the alternate would have taken place before the jurors retired, at any rate, and that 12 would have—or whatever number would have—been present on that occasion would have been required.
> *On that occasion, 12 retired and, as the record shows, only 11 returned with the verdict and we would ask for a mistrial based on that insufficiency. [This is a plain objection to lack of unanimity.]*
> Does the court wish me—

## II. THE FEDERAL RULES OF CRIMINAL PROCEDURE

### A. *The Rule Requiring a Jury of Twelve.*

At the time of trial, Fed.R.Crim.P. 23(b) provided:

> Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval·of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 *should the court find it necessary* to excuse one or more jurors for any *just cause* after trial commences.

> THE COURT: I was just waiting for the Government to respond.
> MR. O'MALLEY: Your Honor, there was clearly an inquiry by this court as to whether or not the defendant would waive the right to be present with 12 jurors.
> There was never any qualification on that request for a waiver, never any inquiry by the court whether that waiver was limited only to 12 jurors during trial, never any indication by the defense that that waiver was limited to only 12 jurors—less than 12 jurors during the trial proceedings themselves.
> That was a waiver that was clearly made, openly stated, with the advice of counsel, and put on the record.
> That waiver being heard and the luck of the draw or the will of the jury having gone against the defendant, I think it's improper at this time for this motion and I think this motion should be denied.
> THE COURT: The Court will take it under advisement.
> (Tr. 397, 400–01) (emphasis added).

4. Appellant's motion for new trial complained about the haste with which deliberations were resumed, stating: "The delay of another day for a bench warrant *search for the missing juror* (or for time to allow him to recuperate, if ill) ... would have been preferable to the *sua sponte* ascription of waiver in the prior agreement to proceed to trial with eleven jurors, *if necessary,* and the order of the Court that the jury *immediately* renew their deliberations with only eleven jurors present." Defendant's Memorandum in Support of Motion for New Trial, at 6 n. 4 (R. 19) (emphasis added). This argument presumably would have evoked a contradiction if the court had ascertained the reasons for the juror's absence.

(Emphasis added.)[5] The stipulation here was conditional, and comes under the second clause, which contrary to the dissent's assertions, *see* Dissent at 853, requires a finding of some *just cause* that makes it *necessary* to excuse a juror.

■■■ The Rule also expressly required a *written* waiver, but this was not done. The court and the parties should have complied with the Rule and executed a written waiver. Had they done so, much of our difficulty might have been avoided. But we do not rest our reversal on the erroneous failure to execute a written waiver. The requirement of a writing is "procedural," and in situations where the defendant makes an oral waiver in open court with advice of counsel, and where it is clear that the subsequent action taken by the court followed the terms of the waiver, the failure to comply with Rule 23(b) is harmless. *United States v. Ricks*, 475 F.2d 1326, 1328 (D.C.Cir.1973) (per curiam); *United States v. Smith*, 523 F.2d 788, 791–92 (5th Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct.

1475, 47 L.Ed.2d 742 (1976); *United States v. Lane*, 479 F.2d 1134, 1136 (6th Cir.), *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973). We accordingly rule that the failure to reduce the waiver to writing was harmless error.[6]

■■■ Since a spontaneous oral waiver customarily lacks the clarity, specificity, and assurance of adequate consideration of a written waiver, the circumstances must be examined closely, and must plainly evidence the express and knowledgeable consent of the defendant[7] to accepting a verdict of less than 12 jurors.

An examination of the cases in which oral waivers have been held valid is illustrative. In *Ricks*, the oral waiver at issue was made *after* the juror did not appear; it is clear that the waiver extended to continuing the trial. The original stipulation agreed to by the defendant in *Rogers v. United States*, 319 F.2d 5, 7 (7th Cir.1963), *cert. denied*, 375 U.S. 989, 84 S.Ct. 524, 11 L.Ed.2d 475 (1964), was unambiguous, and was renewed *after* the juror failed to ap-

---

**5.** The Supreme Court has subsequently promulgated a new rule, which became effective August 1, 1983:

> Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. *Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.*

51 U.S.L.W. 4507, 4509 (U.S. May 3, 1983). The new Rule adds the italicized language. Both the prior Rule and the amended Rule require a *finding* by the court.

**6.** Our ruling on this point does *not* indicate our approval of this procedure. The prosecutor in this case was well aware of the litigation that has surrounded Rule 23(b). He sought a "formal" waiver from appellant because, he said, the waiver issue "ha[d] been litigated many times" (Tr. 42). The prosecutor obviously was aware of the requirements of 23(b), since he was aware of cases construing it. But neither he, defense counsel, nor the court made any attempt to get a written waiver, as the rule explicitly requires. There was no reason not to

put the waiver in writing. While the rule primarily protects the defendant, it also protects the public. Even rules which are "only procedural," *Ricks, supra,* 475 F.2d at 1328, are not meant to be ignored. The reluctance of an appellate court to overturn a conviction on some procedural violations should not be mistaken for a license to disregard the Federal Rules of Criminal Procedure.

**7.** Since the oral waiver in this case was made by the defendant and her counsel, it is not necessary to address the question whether a stipulation made by counsel, without the defendant's express consent, would be sufficient. The issue has divided other circuits. *Compare United States v. Guerrero-Peralta*, 446 F.2d 876, 877 (9th Cir.1971) (agreement by counsel in defendant's presence ineffective; express statement by defendant required), *with United States v. Spiegel*, 604 F.2d 961, 965 (5th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980) (the rule uses term "parties," not "defendant," and thus *counsel* may waive right). The waiver in this case clearly was made "competently, intelligently, and understandingly" by appellant, "with a full understanding of the implications thereof," and the condition upon which it was premised. *Cf. Davis v. United States*, 123 F.Supp. 407, 414 (D.Minn.1954), *aff'd*, 226 F.2d 834 (8th Cir.1955), *cert. denied*, 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956).

pear. Similarly, in *Lane* the waiver was made *after* the juror was excused. This is not to imply that only an oral waiver *after* the juror is excused is valid,[8] but in each of these cases it was clear that the defense had intelligently and knowledgeably consented to continuing the trial with 11 jurors under the conditions that necessitated that departure from prescribed procedure.

The stipulation in this case is just as clear. One claim asserted by appellant is that the verdict is improper because she had not agreed that the stipulation would apply during jury deliberations. This broad claim is without merit. Appellant unquestionably agreed to accept a verdict of 11 jurors if it *became necessary* to excuse one juror during deliberations. The stipulation did not distinguish between the different phases of the trial, nor did it purport to specify any time for its expiration. If a juror was properly excused at *any* time before verdict, the verdict necessarily would be that of 11 jurors, and such a verdict would have been permissible under the terms of the stipulation and the Rules.

But the stipulation was not an agreement to accept a possible jury of 11 under any and all circumstances. The real issue in this case is whether, under the stipulation and the Rules, the court *properly* continued the jury's deliberations without the missing juror.[9]

## B. *The Effect of the Stipulation*

A conditional stipulation, under the second clause of Rule 23(b), that a valid verdict can be returned by a jury of less than 12 requires a finding by the court that it is *necessary* to excuse the juror for *just cause*. A stipulation that the trial will continue if something "should happen" to a juror and he is excused because he becomes "ill," or he is "unable to come"—*i.e., this* stipulation—is contingent upon the court finding the existence of the occurrence of the specified condition and upon the court's finding that it is "necessary" to excuse the juror.

The Advisory Committee Notes which accompanied Rule 23(b) in its original form made clear the types of situations in which jurors should be excused: the Rule is "useful in case it becomes necessary during the trial to excuse a juror owing to illness or for some other *cause.*" *Id.* (emphasis added). After the 1977 amendment, the Notes explain that the Rule "makes it clear that the parties ... may enter into an agreement to have the case decided by less than 12 jurors *if* one or more jurors are *unable* or *disqualified* to continue" (emphasis added). The terms "unable" or "disqualified" define what is intended by the term "just cause." The Rule permits verdicts of less than 12 if (1) it is necessary to excuse a juror for just cause, and (2) there is a stipulation. The terms of the stipulation itself recognized this fact.

Rule 23(b) stipulations thus are *contingent* upon satisfying this condition precedent. The judge's statements that formed the basis of the stipulation provided that appellant would be "willing to proceed with 11" jurors "in the event we should have *anything happen* to them, they are *unable* to come" (Tr. 43). Thereafter, the judge repeated the condition that the waiver would operate "if something should happen" to one of the jurors. *Id.* The stipulation thus would *not* become operative unless a juror's absence was due to some ascertainable happening that rendered him "unable" or "disqualified" to participate.

---

**8.** In cases involving written waivers permitting eleven jurors, it has been held that a pretrial stipulation need not be renewed at the time the juror is excused, even if the juror is excused during deliberations. *See United States v. Pacente,* 503 F.2d 543, 552 (7th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *United States v. Stolarz,* 550 F.2d 488, 493 (9th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct.

162, 54 L.Ed.2d 119 (1977). That is the position taken in the Advisory Notes accompanying the 1977 Amendment to Rule 23(b).

**9.** There is nothing in the transcript to indicate that the court ever "excused" the juror. The court just permitted the jury of 11 to proceed with its deliberations.

A juror who takes "French leave" [10] cannot be said to have had anything "happen" to him. The waiver, by its terms, did not abrogate either the trial court's duty to investigate the non-appearance of a juror and make a finding as to the cause, or appellant's right, in the absence of determined good cause, to the unanimous verdict of all the jurors who heard the evidence, were instructed by the Court, and retired to deliberate on the verdict.[11] Because no finding of just cause was made, the stipulation was not complied with, and therefore cannot excuse the violations discussed below.

## C. The Rule Requiring a Unanimous Verdict

Rule 31(a) of the Federal Rules of Criminal Procedure requires: "The verdict shall be unanimous." As indicated above, 12 jurors began deliberations and the verdict was returned by only 11 jurors. There is *nothing* in the transcript between the recess of the jury of 12 at 6:05 p.m. on Friday, November 19, 1983 (Tr. 395), and the return of the verdict of 11 at 11:22 a.m. on Monday, November 22, 1983 (Tr. 397)—much less any finding of a justifiable reason for accepting the verdict of 11 jurors. And, as noted above, the Government admits that defense counsel objected to the court's permitting the jury to continue its deliberations with only 11 jurors on the ground "the Government should be required to convince all of the jurors it had attempted to persuade … twelve in this case" (R. 19–5). While appellant's objections were not precisely articulated, the substance of her objection made it clear that she did not waive her right to a *unanimous* verdict. The waiver went to the number of jurors, not to the requirement of unanimity. She had stipulated to the waiver of one juror—but since it had *not* been

found *necessary* to excuse any juror, that waiver could not be construed as a waiver of unanimity. There is a well recognized distinction between the waiver of a *jury of 12*, and the waiver of *unanimity. United States v. Pachay,* 711 F.2d 488, 492 (2d Cir.1983); *United States v. Vega,* 447 F.2d 698, 701 (2d Cir.1971) (counsel was willing to accept a jury of 11, but would not accept a non-unanimous verdict; hold-out juror excused), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972).

Excusing a juror during deliberations jeopardizes the right to unanimity protected by Rule 31(a). This Rule was designed to protect the rights of defendants under the Sixth Amendment to the United States Constitution. *See* Fed.R.Crim.P. 23, Notes of Advisory Committee subd. (a). When the juror has been excused on a finding of just cause and the defendant has consented, the dangers are minimized and the procedure permitted by Rule 23(b) does *not* violate Rule 31(a). But when, as here, there is no finding by the court that it is "necessary … for just cause" to excuse a juror during deliberations, a defendant is denied the right to a unanimous jury verdict that is protected by Rule 31(a). Significantly, four circuits—the Second, Third, Sixth, and Ninth—have held that the intent of the drafters of Rule 31(a) *not* to permit waiver of unanimity, *even with the consent of the defendant,* is evident from the preparatory history of the Rule. *See United States v. Pachay,* 711 F.2d 488, 490–91 (2d Cir.1983) (citing *United States v. Lopez,* 581 F.2d 1338, 1341–42 (9th Cir.1978); *United States v. Scalzitti,* 578 F.2d 507, 510–12 (3d Cir.1978); *Hibdon v. United States,* 204 F.2d 834 (6th Cir.1953); 8A *Moore's Federal Practice* ¶ 31.02[1], at 31–3 (2d ed. 1982); 3 C. Wright, *Federal Practice and Procedure* § 511, at 3–5 (2d ed. 1982)). The dissent completely ignores this feature of the Rule.

---

**10.** *"French leave.* Leaving a party, house, or neighborhood without bidding good-bye to anyone; to slip away unnoticed." E. Brewer, The Dictionary of Phrase and Fable (1978).

**11.** Since this stipulation did not even purport to waive the trial court's just cause determination, there is no need to decide whether this duty can

*ever* be waived. *Cf. Fowler v. Hunter,* 164 F.2d 668 (10th Cir.1947), *cert. denied,* 333 U.S. 868, 68 S.Ct. 785, 92 L.Ed. 1146 (1948) (waiver entered into in habeas corpus case *after* jurors did not return from a break; no reason given for absence).

■ However, because appellant's stipulation did not purport to waive the unanimity requirement, and appellant never consented to such waiver, it is not necessary in this case to rely on these authorities. The right to a unanimous jury is derived from the federal rules *and* the Sixth Amendment. *United States v. Morris,* 612 F.2d 483, 488–89 (10th Cir.1979); *United States v. Scalzitti,* 578 F.2d 507, 511 (3d Cir.1978); *United States v. Gipson,* 553 F.2d 453, 456 (5th Cir.1977). In *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), five justices were in agreement that in *federal* criminal cases juries were required by the Sixth Amendment to be unanimous. Appellant's counsel, *before* the jury returned its verdict, several times objected to construing her stipulation as a waiver of *unanimity* (Tr. 397; R. 19–5 to 19–7). In fact, he expressly pointed out that the verdict would lack "unanimity" (R. 19–6, Brief for Appellant at 6–8). That is sufficient to support her claim of error. This objection is also repeated in her appeal. Brief for Appellant at 6–8, 10–18, 20–30.[12]

As the Ninth Circuit has explained,

The dynamics of the jury process are such that often only one or two members express doubt as to a view held by a majority at the outset of deliberations. A rule which insists on unanimity furthers the deliberative process by requiring the minority view to be examined and, if possible, accepted or rejected by the entire jury. The requirement of jury unanimity thus has a precise effect on the fact-finding process, one which gives particular significance and conclusiveness to the jury's verdict.

*United States v. Lopez,* 581 F.2d 1338, 1341 (9th Cir.1978). This reasoning applies with equal force to a situation where, as here, a juror has absented himself for no valid reason: in both cases there is a danger that dissenting views may not be heard, debated, and resolved by the process of arriving at a unanimous verdict. The requirement of unanimity for a verdict in a criminal case "is inextricably interwoven with" the standard of proof beyond a reasonable doubt. *Hibdon v. United States,* 204 F.2d 834, 838 (6th Cir.1953) ("there cannot be a verdict supported by proof beyond a reasonable doubt if one or more jurors remain reasonably in doubt as to guilt"). The requirement of unanimity would lose a great deal of its force if, as the dissent implies, jurors may opt out at will. Permitting this erosion would lessen the prosecution's burden of convincing the entire membership of the jury. The record here cannot support a conclusion that appellant waived her right to a unanimous verdict. We accordingly rule that her right to a unanimous jury verdict was violated.

### D. *The Verdict of 11 Jurors*

Was "it *necessary* to excuse one ... juror[ ] for any *just cause,*" in accordance with the condition of the stipulation or the Rule? While counsel, contrary to the statement of the dissent, *did* object promptly by telephone to continuing delib-

---

**12.** The following points in appellant's brief clearly indicate her objection to construing her stipulation as a waiver of unanimity:

 I. APPELLANT WAS DENIED HER *FIFTH AND SIXTH AMENDMENT RIGHTS* TO DUE PROCESS AND A FAIR TRIAL BY THE TRIAL COURT'S RULING THAT FEWER THAN THE TWELVE ORIGINAL JURORS WHO HEARD THE CASE COULD RETURN A VERDICT[.]

 II. THE DEFENDANT AGREED ONLY TO PROCEED TO TRIAL WITH FEWER THAN TWELVE JURORS, IF NECESSARY. THAT CONTINGENCY NEVER AROSE AND THE WAIVER IS THEREFORE MOOT[.]

 \* \* \* \* \* \*

 IV. CONSEQUENTLY THE RETURN OF A GUILTY VERDICT BY FEWER THAN THE TOTAL NUMBER OF JURORS WHO HEARD AND UNDERTOOK TO DECIDE THE CASE DEPRIVED DEFENDANT OF DUE PROCESS OF LAW AND A FAIR TRIAL[.]

Brief for Appellant at ii (emphasis added). The brief also relies upon Rule 23(b), and the *Conclusion* asserts that she was denied her rights under the 5th and 6th Amendments:

 The Defendant has been deprived of her right under the United States Constitution to due process of law and to a fair trial, pursuant to the Fifth and Sixth Amendments thereof, and the judgment of the District Court should be reversed and a new trial ordered.

erations with only eleven jurors, there is no indication that in his telephone call he requested a search or inquiry for the missing juror—or even that he was informed that such inquiry had *not* been made. But it was the *court's* clear duty to determine the whereabouts of the missing juror and make a finding that there was *just cause* for excusing him. The explanation in appellant's brief credited by the Government, the statements of the Government prosecutor, and the emptiness of the record cannot support a statement that the reason for the juror's absence was *ever determined*—and there is no support whatsoever for the suggestion that the court ever made a finding that just cause existed to excuse the missing juror.

The objections made by appellant were broad enough to raise the issue that the court erred by failing to find "just cause." Counsel did not, and he was not required to, use those precise words. The objection was to the substantial variance from normal jury *procedure* in criminal trials that the court indicated it proposed to follow without a finding that such ruling was "necessary." No magic words are required to constitute an objection. By analogy to objections to evidence, the objection to procedure, the specific ground for the objection being apparent from the context, was sufficient: "(1) a substantial right [was] affected, and (2) the nature of the error was called to the attention of the judge, so as to alert [her] to the proper course of action." Fed.R.Evid. 103(a), Notes of Advisory Committee subd. (a).

The court considered it was in a position to rule immediately, and it overruled defendant's objections by permitting the jury of 11 to proceed with its deliberations. In thus permitting the jury of 11 to proceed and return a verdict, the court treated the stipulation to waive a jury of 12, *if necessary*, as sufficient to waive a jury of 12 even if *not necessary*. Defendant's objection was timely, positive, and specific, and the error was clear and obvious. Both objections were again raised in open court before the jury returned (Tr. 397), and *in haec verba* in defendant's motions for a mistrial or new trial (R. 19–5b, ¶¶ 16–17). There is nothing to the dissent's assertion that the substance of the objection was not *raised* at trial. Dissent at 846, 847, 848, 850, 853. A *finding* of good cause necessity was required to avoid a violation of Rule 23(b) and no such finding was ever made.

■ Since (1) the record is silent, and (2) the court must "find" *just cause* on the record, and (3) the case must be affirmed or reversed on the record, and (4) there is nothing in the record to support the court's action, the case must be reversed. The stipulation was the only possible basis for proceeding without 12 jurors, and nothing in the record supports a finding that the terms of the stipulation were complied with. Contrary to the implication of the dissent, there is nothing novel about deciding cases on the record or the absence thereof.[13] The record in a criminal case must support the judgment, and the court is just as responsible as counsel for seeing

---

**13.** With no supporting claim by the Government, and with no support in the record, the speculation by the dissent that the judge might have "had just cause for dismissing the juror," Dissent at 849, is bootless. Nothing in the record indicates that the court ever dismissed the juror, much less excused him. So far as the record is concerned, the court just permitted the jury of 11 to continue its deliberations without the twelfth juror and without making *any* finding.

Describing the record as "incomplete," Dissent at 850, is a misstatement. The record *is* complete—it just does *not* show something that never happened. It does not support a finding that the court acted in compliance with the stipula-

tion because it did not so act. The record does not reflect that the required inquiry was ever made, and also, by its silence reflects that the required *finding* was *never* made.

The dissent says we "cannot say what the judge here did." Dissent at 857. That is incorrect. The record indicates that the court directed continuing deliberations with only 11 jurors in a criminal case submitted to 12 jurors, without complying with the terms of the stipulation upon which the court was required to ground its action. To assume in a criminal case, when the record is silent, that the court properly applied a rule when a specific finding is required and the record discloses none, cannot be justified.

that the record supports its rulings. The absence of the required finding in the record is a substantial error. The argument that the judge is not ordinarily required to establish the cause for the juror's absence, *see* Dissent at 854 n. 42, flies directly in the face of Rule 23(b).

■ We cannot condone the loose jury practices in which the dissent finds no error. The dissent rests on loose and highly speculative possibilities and assumptions that have no support in the record.[14] We find that the court denied defendant her right to the unanimous verdict of 12 jurors without any finding that anything did "happen" to any one of them so that he was "unable" to participate. That is *violating* the stipulation, not relying upon it. Such trial conduct also violated Rules 23(b) and 31(a).[15]

IV. DEFECTS AFFECTING SUBSTANTIAL RIGHTS AND PLAIN ERROR

■ From the foregoing it is sufficiently clear that appellant's basic contentions were in substance made timely and contemporaneously at trial, and the Government so admits. But even assuming that counsel did not specifically ground his objection to the procedure and verdict in the formal terminology of Rule 23(b) or 31(a), or that, as the dissent argues, the objections suffered from other defects, the error was serious enough to require reversal. Fed.R. Crim.P. 52(b) provides:

Plain errors or *defects affecting substantial rights* may be noticed although they were *not brought to the attention of the court.*

(Emphasis added.) In *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), the Supreme Court described "plain errors" as follows:

In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

Thus, under the Rule, an appellate court may ground its decision on defects affecting substantial rights—or plain errors— even though the defect or error was not raised at all. In fact, the rule is frequently applied when the error or defect is *not* brought to the attention of the trial court. *See, e.g., Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (per curiam); *Brotherhood of Carpenters v. United States,* 330 U.S. 395, 412, 67 S.Ct. 775, 784, 91 L.Ed. 973 (1947); *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926); *Mahler v. Eby,* 264 U.S. 32, 45, 44 S.Ct. 283, 288, 68 L.Ed. 549 (1924).

Plain error has been variously defined, and it depends upon the facts of each particular case. The words "plain error" are self-explanatory to a certain extent, and include "defects affecting substantial rights." Fed.R.Crim.P. 52(b). The dissent fails to recognize fully this basic feature of the Rule.

The Fifth Circuit defined the circumstances in which plain errors would be noticed as "those involving serious deficiencies which affect the fairness, integrity or

---

**14.** *See* Dissent at 849 ("might have been"), 853 ("it is at least arguable"); 854 n. 42 ("it is entirely possible"), 857 ("for all we know," twice), 857 n. 51 ("might well have been"), and 858 ("The judge apparently assumed").

**15.** One error in the dissent is its insistence on treating the stipulation as though the waiver was not *conditional.* To assert that the "court *relied* on the defendant's stipulation," Dissent at 19, is a plain misstatement. It only relied on the waiver portion of the stipulation and ignored the express limited preconditions which were required to be proven before the waiver

could be applied. Treating the court's error here as minimal would trivialize the rights of federal defendants to a jury trial as required by the Constitution, the Federal Rules of Criminal Procedure, and federal court decisions.

To say that the court gave the defendant the "benefit of her bargain" is a perversion of both "benefit" and "bargain." Dissent at 855. Some bargain—continuing a trial with an incomplete jury without giving any reason and denying the defendant a unanimous verdict of the jury to whom the case was submitted.

public reputation of the judicial proceedings or which constitute obvious error." *United States v. Brown*, 548 F.2d 1194, 1207 (5th Cir.1977). We defined it in similar terms in *United States v. McCord*, 509 F.2d 334 (D.C.Cir.1974) (en banc), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975):

> [T]he doctrine of plain error encompasses those errors which are obvious, affect the substantial rights of the accused and if uncorrected would be an affront to the integrity and reputation of judicial proceedings.

*Id.* at 341 n. 10 (citing *Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962); *Johnson v. United States*, 318 U.S. 189, 199–201, 63 S.Ct. 549, 554–55, 87 L.Ed. 704 (1943); *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Other definitions: "Plain error is one so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Rink v. United States*, 388 A.2d 52, 56 (D.C.App.1978). And plain error is that which "affected [appellant's] 'substantial rights' resulting in a miscarriage of justice." *West v. United States*, 359 F.2d 50, 53 (8th Cir.), *cert. denied*, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966).

█ The application of the plain error rule is within the sound discretion of the court. *Billeci v. United States*, 290 F.2d 628, 629 (9th Cir.1961). It is to be applied sparingly to errors vital to defendants. *United States v. Frady*, 456 U.S. 152, 163 n. 3, 102 S.Ct. 1584, 1589 n. 3, 71 L.Ed.2d 816 (1982) (citing *Wiborg v. United States*,

163 U.S. 632, 658, 16 S.Ct. 1127, 1137, 41 L.Ed. 289 (1896)).

As noted previously, federal defendants are entitled to (1) juries of 12, unless they are properly waived in accordance with Rule 23(b), and (2) unanimous verdicts by the jurors who deliberated, unless a juror was properly excused in accordance with Rule 23(b).[16] Rule 23(b) requires a *finding* of just cause before it is operable.

## A. *The Right Affected*

█ The obvious and substantial right of appellant that was denied is her right to a *unanimous* verdict by the *jury of 12* who heard her case and began their deliberations. There is nothing in this trial record, or in the contentions of the Government, that indicates the juror in this case had anything happen to him that gave him any justifiable reason to absent himself. Appellant speculates that the juror may have been a lone holdout for innocence in the face of a hostile pro-conviction majority, and for that reason stayed home rather than take part in the proceedings. There is no evidence that such was the case—there is no evidence of any reason whatsoever—but that is exactly one of the possibilities the Rules are designed to avoid. The defendant's right to a jury trial, with all its historic and procedural protections, is too important to allow jurors to opt out by simply failing to show up after the commencement of deliberations. *The rights of both the defendant and the prosecution under the Rule and the stipulation require that a reasonable investigation be made and the court find it to be neces-*

---

**16.** The Government argues that its contrary position here is "completely supported" by *United States v. Pacente*, 503 F.2d 543 (7th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974). Brief for Government at 9, 11. Nothing could be further from the truth. In *Pacente*, the defense stipulated in writing to excusing one juror "by reason of illness or for any other good cause as determined by the Court." *In accordance with* the stipulation the court excused one juror during its deliberations for "good cause," *i.e.,* her "father [became] seriously ill and not expected to live." *The judge in open court announced his finding of facts which*

*made it necessary to excuse the juror* and the court of appeals held that the facts constituted "good cause." *Id.,* at 551–53. In sum, the court in *Pacente* complied with the *conditions* of the stipulation and set forth its finding of "good cause" on the record. In contrast, the court here made no finding of any *reason* whatsoever to show that it was "necessary," as the stipulation and the Rule both required, to proceed without the absent juror. In passing, it should be recognized that *this requirement for a unanimous verdict of 12 jurors, except when just cause is shown, protects both an acquittal minority and a guilty minority.*

*sary for some stated reason constituting good cause to excuse the juror.*

The trial court has a great deal of discretion in deciding to excuse a juror for cause. An appellate court ordinarily will not second-guess such a determination, but the parties agree that, to the best of their knowledge, no determination of any reason for the juror's absence was *made* in this case. We have demonstrated that this failure violated (1) the stipulation, (2) Federal Rules 23(b) and 31(a), and (3) basic obligations of the court to supervise the jury. Such failures constituted defects which denied appellant's substantial right, in the absence of determined good cause, to the unanimous verdict of the 12 jurors to whom the determination of the cause was duly submitted.

### B. *Prejudice*

The claim is made by the dissent that appellant has shown no prejudice. But no further prejudice need be shown than that the court did not comply with the stipulation and Rule 23(b), *and* that appellant was denied her right to have her case decided by the *unanimous verdict* of the 12 jurors who heard the case. In cases involving secret jury deliberations it is virtually impossible for a defendant to demonstrate actual prejudice. Courts therefore have determined that the potential for serious harm and the interest of the defendant—and the public—in fair, unbiased and secret deliberations are so great that no evidentiary showing of actual prejudice, or of defense counsel's objection to the internal functioning of the jury of which he could not possibly be informed, is required.

 For example: Without regard to actual prejudice, it has been held to constitute error for a trial court to permit a prosecution witness merely to enter the jury room during deliberations in order to play a tape for the jurors, *United States v. Pittman,* 449 F.2d 1284, 1286 (1971); or to place the jury in the custody of sheriffs' deputies who are testifying at the trial, even when there is no indication that they have spoken to the jurors, *Turner v. Louisiana,* 379 U.S. 466, 472–74, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965). It is *plain*

*error* for the trial judge to call the jury back from deliberations and ask them how they are numerically divided, even when there is no showing that it had any influence on the jury. *See Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926) ("We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as grounds for reversal."); *Government of the Virgin Islands v. Romain,* 600 F.2d 435, 437 (3d Cir.1979); *United States v. Noah,* 594 F.2d 1303, 1304 (9th Cir.1979) (per curiam). Similarly, it is plain error for the trial court to permit an alternate juror to retire to the jury room for deliberations with the other jurors, even for a period of as little as 45 minutes and even when the alternate says nothing. *See United States v. Chatman,* 584 F.2d 1358, 1361 (4th Cir. 1978) (although evidence against defendant was overwhelming, reversal was required). We believe that prejudice is *inherent* when a court permits a jury of 12 to continue deliberations and return a verdict with only 11 jurors, without making the finding required by the Rule and the stipulation. The dissent can cite no decision that supports excusing a juror (except in accordance with a contemporaneous agreement) without a finding of a stated reason.

 Underlying the dissent's plain error analysis is the apparent notion that the Rule cannot be applied because it asserts that no "miscarriage of justice" occurred in this case. But where, as here, the prejudice is inherent in the error complained of, the defendant is not required to prove that he is innocent, or that the outcome of the trial would have been different, had the error not been made. *Brasfield, supra,* 272 U.S. at 450, 47 S.Ct. at 136. *Chatman, supra,* 584 F.2d at 1361. The evidence amassed against appellant was considerable—but it is well settled that even defendants who are obviously guilty are entitled to the basic procedural safeguards of a fair trial. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 406, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977) (right to counsel during non-coercive questioning); *Estes v. Texas,* 381 U.S. 532, 542–44, 85 S.Ct. 1628, 1632–33, 14 L.Ed.2d 543 (1965) (broadcast of trial

jeopardized fairness); *In re Murchison,* 349 U.S. 133, 137–38, 75 S.Ct. 623, 625–26, 99 L.Ed. 942 (1955) (judge who functions as "one-man grand jury" cannot preside at contempt trial arising from grand jury proceedings); *Rideau v. Louisiana,* 373 U.S. 723, 726–27, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (television broadcast of defendant's confession).

■■■ In our judgment, as outlined above, *the defects affected appellant's sub-*

stantial rights, and thus justify reversal under Rule 52(b). We disagree with the dissent that this court is powerless to correct errors of such magnitude.

The judgment of the trial court is reversed, and a new trial ordered.[17]

*Judgment accordingly.*

WILKEY, Circuit Judge, dissenting:

The majority in this case would grant a mistrial because the verdict in this case

---

17. The dissent indulges in many misstatements of fact and law, extreme prophecy, overstatements, and extravagant exaggeration. It repeatedly understates the extent of the objections that were raised by defense counsel. It completely ignores both the plain implication of the issues raised by the timely objections and the court's authority under Rule 52(b). These errors are generally answered by the statements of fact and law set forth above, but a few deserve additional comment.

It should be noted that, since the judge had started the trial of another case when the *Essex* jury retired to deliberate, taking a short time to have the juror's absence checked by the marshal would not have delayed the subsequent trial. Meanwhile, as the *Essex* jury was in the deliberating phase, the court easily could have suspended jury deliberations to await the marshal's report on the absent juror without holding up the other trial.

It is also a misstatement to assert that we are granting the mistrial merely because of an 11-juror verdict. We are reversing because the verdict of 11 was returned without complying with the stipulation, which was the only basis that would justify a verdict of 11 jurors. Under such circumstances the verdict also violated the *unanimity* requirement of Rule 31(a). The dissent asserts there was a deliberate waiver, but there was *never* a waiver of the requirement for a "unanimous" verdict of the jurors that heard the case, and *that* objection was clearly raised. To state that the objection was not raised and understood is to underestimate the perception of the learned and experienced trial judge.

The fact that the stipulation was not limited to the open trial—contrary to the defendant's contention—is no justification for not applying it to the jury deliberations as the Government contended. The defense made two objections: (1) that the stipulation was limited to the open trial, and (2) that in any event the terms of the stipulation were not complied with. The fact that we ruled against the first point does not justify a refusal to apply our decision that the stipulation did apply to the factual situation covered by the second point.

The dissent denigrates the requirement of a unanimous verdict of the jurors to whom the case was submitted for decision as only a *Feder-*

al Rule. However, the Federal Rules, and this Rule in particular, have more status than a pure statute, since this Rule originated with the Supreme Court and was "approved" by Congress. *See* 91 Stat. 320. Rule 23 also has constitutional underpinnings; it "is a formulation of the constitutional guarantee of trial by jury." Fed.R. Crim.P. 23, Notes of Advisory Committee subd. (a).

The dissent suggests that there is no need for the court to make a record for its ruling. Dissent at 855–856. But Rule 23(b) requires where the stipulation is conditional that "the court *find* it necessary ...." That is no idle requirement that is satisfied by a silent record. For the dissent to indulge in the shorthand statement that Essex "*preferred* a verdict of less than 12 to delay or mistrial," Dissent at 857 n. 52 (emphasis added), it must ignore the controlling fact that her consent was limited to situations where "something happened" to a juror and it was shown to be "necessary" to excuse him. "Preferred" is a gross overstatement and fails to recognize the narrow conditions under which Essex was willing to accept a verdict of 11.

The dissent recognizes that under the present Rule, *see* note 5 *supra,* the court should "justify the choice made"—but the stipulation and the prior Rule placed the *same requirement* on the court, and it must similarly "justify the choice."

Some objection should also be taken to the essence of the dissent's contentions: that appellant should be penalized because her counsel, with no prior notice, did not set forth all his objections in precise formal terms immediately upon being informed *by telephone* that one juror was missing. The dissent fails to recognize that nothing in the record indicates that appellant's counsel was advised at any time that the court had *not* found that something "happened" to the missing juror that made it "necessary" to continue without him. Counsel did "object" immediately to the court's relying on the stipulation to permit a jury of 11 to continue deliberations under the limited facts that were given to him by telephone. We have not yet reached the stage where criminal cases are tried, and defendants' substantial rights are frittered away by telephone, without any record being made.

was reached by an eleven-member jury. My colleagues would reach this result despite the fact that in open court the appellant deliberately and advisedly waived her right to a twelve-member jury, and despite the fact that the appellant's attorney never raised to the trial court the issue now considered dispositive here by the majority *sua sponte*. With a deliberate waiver by a stipulation on which the trial court relied, no visible prejudice, no opportunity for the court to act on the issue now discovered to be important, I fail to see any justification whatsoever for reversing the conviction.[1]

## I. FACTS

The jurors for appellant's trial had been seated and sworn when appellant's counsel observed on the panel a juror he had stricken.[2] Appellant's counsel drew this fact to the court's attention. At this time, however, only one alternate had been chosen and the remaining members of the venire had been released. The court and counsel for both sides discussed the dilemma:

MR. GOODBREAD [DEFENSE COUNSEL]: Your honor, may we be heard on the matter of the jury? ... One juror in the box is one the defense has stricken.

We feel strongly enough about that strike to ask that he be removed from the panel in whatever way the court deems fit in order to proceed with the trial. May we suggest replacing him with the alternate?

THE COURT: That leave us with no alternates. Let me ask you this. Is it agreeable to you—if we should have a problem with some juror becoming ill or being unable to proceed—to have less than a twelve-member jury?

MR. GOODBREAD: The defense would have no objection to that, Your Honor.

THE COURT: Very well.[3]

The government initially objected to this solution. After a colloquy with the court, however, the government agreed to the defendant's proposal.

MR. O'MALLEY [GOVERNMENT COUNSEL]: It is agreeable to the government, your honor, but this is an issue which, as the court well knows, has been litigated many times.

If we could have a formal waiver from Miss Essex, that is, to indicate that she has been advised that she has an absolute right to have twelve jurors and that if she waives it she waives any right to appeal that issue, and she must be satisfied with a verdict of eleven.

THE COURT: Do you understand, Miss Essex, that you are entitled to a jury of twelve and you would certainly have it if we had it. At the moment you are going to have twelve.

I am just saying that in the event something should happen to one of them, we don't have any alternates.

THE DEFENDANT: Yes, Ma'am.

THE COURT: So if something should happen to one, we would proceed with eleven.

Is that your understanding and do you agree to that?

THE DEFENDANT: Yes, Ma'am, I do.[4]

The case then proceeded to trial. After all the evidence had been introduced, the judge charged the jurors and excused them for deliberation. The jurors failed to reach a verdict on their first day of deliberations,

---

1. I hope that this as a precedent is confined to its facts: *i.e.*, the precise stipulation entered into here, a defendant named Essex, a lawyer named Goodbread, the offense of heroin possession, etc.

2. The majority claims that this dissent "rests on loose and highly speculative possibilities and assumptions that have no support in the record." Maj.Op. at 843. The quotations prof-

fered by the majority, however, all involve instances where the dissent candidly acknowledges that the record is unclear.

3. No. 83–1169, *United States v. Essex*, Supplemental Record [hereinafter, Trial Transcript] at 39–40.

4. *Id.* at 42–43.

a Friday. They were instructed to return the following Monday.

On Monday one of the jurors failed to appear. The judge's secretary contacted Essex's attorney and informed him of the situation. He also was told that the judge intended to proceed with only eleven jurors, in accordance with the stipulation. According to Essex's brief, her attorney objected vehemently to proceeding with eleven jurors, but said nothing about showing "just cause" for excusing the absent juror:

[Essex's counsel said] what defendant had agreed to was to proceed to trial, if necessary, with eleven jurors. That turned out not to be necessary, since the case had been heard for two days by twelve jurors, all of whom had retired and invested nearly two hours of deliberation in the case. Counsel expressed opposition to the proceeding with eleven jurors under these changed and different circumstances, stating the opinion that the Government should be required to convince all of the jurors it had attempted to persuade (however many that may have been—twelve in this case, as usual) and that to allow the panel to be whittled away by exigencies and circumstances would geometrically lighten the Government's burden to achieve conviction by unanimity of those jurors who actually heard and deliberated the case. Counsel further expressed the opinion that the agreement concerning and the matter of the alternate juror was academic and moot at that point, since the alternate juror would have been excused before the jury had retired to begin its deliberations anyway, and would have had no part to play had a juror failed to appear to resume deliberations. On those grounds, Counsel objected to proceeding with only eleven jurors after deliberations had begun.[5]

Essex's attorney was forceful enough in his objections to cause the judge to be summoned away from proceedings then underway in open court. Essex's brief also recounts in detail her attorney's discussion with the judge:

In counsel's subsequent conversation with [the judge], he repeated the foregoing contentions and expressed further opposition to the case proceeding without the twelfth juror present. [The judge] took the position at that point, however, that Counsel and defendant had earlier agreed on the record to proceed with only eleven jurors. When informed of Counsel's distinction between an earlier stated agreement to proceed to trial (if proven necessary) with eleven jurors and a subsequent requested agreement to allow only eleven of the twelve who had then heard the case to then decide it (not proven necessary), [The judge] expressed the opinion that there was no difference in the fact situations. Stating that she did not know any other way to proceed, [the judge] then informed counsel that she would allow the eleven jurors to proceed with deliberating the case.[6]

The jury returned a verdict of guilty.[7] Essex's counsel moved for a mistrial and a new trial. He advanced essentially the same arguments as those he had to the judge earlier; once again, in both his statements before the court and in the subsequent memorandum filed in support of the motion, *nothing* was said about "just cause."[8]

The judge took the motions under advisement, and ultimately denied both.[9] Essex was sentenced to a period of incarceration not to exceed three years.[10] This appeal followed.

5. Brief for Appellant at 6–7.

6. *Id.* at 7–8.

7. Trial Transcript at 398.

8. No. 83–1169, *United States v. Essex* on Appeal [hereinafter, Record] at 19.
 Essex's attorney did advance essentially the same footnote argument as was later used on appeal. Defendant's Memorandum in Support of a Motion for a New Trial 5–6.

9. Trial Transcript, Part 2, at 2.

10. Record at 25.

## II. ANALYSIS

### A. *Duration of Waiver*

In the proceedings before the lower court, Essex advanced a single argument in favor of her motion for a mistrial: that the waiver ceased to be operative when the evidence-taking phase of the trial ended.[11] The majority has correctly disposed of this claim,[12] and it need not detain us here.

### B. *Dismissal of Juror for "Just Cause"*

Essex has advanced a second argument—for the first time—on appeal. Essex merely hinted at this rationale in her appellate brief,[13] but it was advanced more directly at oral argument. The very late introduction of this totally different rationale obviously hampered the ability of the government to refute it factually or analytically. This argument holds that the waiver applied only if the judge found that a juror's absence was warranted by just cause. Essex argues that a mistrial should be declared since the trial judge (never having the issue raised) made no formal finding on the just cause issue. The majority rests its entire holding on this afterthought, footnote argument.

All parties agree that the judge made no finding on the record as to just cause. The record does not even indicate whether the judge ever inquired as to why the juror was absent. From all the record shows, the absent juror might have been dead, asleep, hospitalized, incarcerated, coerced by an employer, or bored with the trial. Some of these possible reasons would make the juror's absence unavoidable; others would not.

As a matter of good practice, the judge should establish why the juror was absent. A simple check would help the court ensure that the absence was not caused by intimidation by one of the parties, by an employer or by other jurors. Such an inquiry would protect the court's own interest in preserving the sanctity of the jury proceedings. The record before us does not tell whether such an inquiry ever was made.

The silence of the record should not be overstated, however.[14] It would be a mistake to assume that the juror simply chose not to appear; similarly, it would be an error to assume that the judge did not establish to her own satisfaction that she had just cause for dismissing the juror. Since all we know is that the record is silent, our inquiry should be limited to deciding whether the absence of record findings as to the cause of the juror's absence constitutes reversible error.

---

**11.** Brief for Appellant at 10–14.

**12.** Majority Opinion at 12. The same argument has been rejected by at least one other court. *United States v. Pacente*, 503 F.2d 543, 552 (7th Cir.) (*en banc*) *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974) ("[D]efendant argues that the stipulation only authorized release of a juror during the receipt of evidence, not after the jury retired to deliberate. The stipulation, however, contains no such limitation, and the language of Rule 23(b) permitting stipulation *any time before verdict* clearly requires none.")

**13.** Brief for Appellant at 23–24, 24 n. 5.

**14.** The majority attempts to suggest that the factual ambiguities were resolved at oral argument, claiming that the government stated that "so far as [it] knew, the reason for the missing juror's absence was *never* determined." Maj.Op. at 837.

 Several objections can be raised to the majority's apparent reliance on the government's alleged statements at oral argument. First, I was not aware at oral argument that any such concession was made by government counsel. I heard the government counsel state squarely that *no* inquiry needed to be made, but I never heard him make the very different statement that none had been made. Since no tape recording was made of the oral argument, the majority's version of events cannot be proved or disproved. Secondly, the attorney appearing for the government at oral argument—Mr. Facciola—made no appearance of record at Essex's trial. Any statement he might have made as to his knowledge would prove at most that he had made no inquiries into an issue that was never squarely raised until oral argument. Finally, in any event, not even trial counsel would necessarily know whether the judge had in fact made inquiries sufficient to establish the cause for the juror's absence. Any statement made by the government at oral argument would thus leave the factual record exactly as it was before: completely silent as to whether just cause existed or was established for the juror's dismissal.

Faced with an incomplete record, the majority proceeds to read into that record facts which would alter the profile of the case. *See, e.g.,* Maj.Op. at 834 ("The government admits that the defendant objected that it was 'not *proven* necessary' to continue without the juror and that the court overruled said objection"), ("Since there was no *finding* of any reason that it was 'necessary' to proceed with less than a full jury"); *Id.* at 836 ("The Government's concession also admits appellant's statement that counsel objected to the Court's proceeding with only 11 jurors on the ground that the stipulation only agreed to 11 jurors *'if necessary'* and '[t]hat turned out *not to be necessary'* "); *Id.* at 842 ("[T]he court treated the stipulation to waive a jury of 12, *if necessary,* as sufficient to waive a jury of 12 even if *not necessary.*") Given the incomplete record, the majority does not and cannot know that its assertions are true.[15]

**15.** Today's majority opinion is thus based on a precarious pyramid of speculations. *What if* the trial court failed to ascertain why the missing juror was absent? *What if* that juror was missing for an illegitimate reason? *What if* that reason was that the missing juror was a holdout for acquittal?

It could, of course, be argued that this court cannot afford to risk that these "what if" situations might have occurred. It could be argued that the burden rests on the trial court to show affirmatively that these "what ifs" are not lurking in a silent record.

The majority does not take this approach. Instead, the majority assumes the answer to many, if not all, of these "what if" issues, and proceeds to fashion an opinion responsive to what might have been. It does not diminish the incorrectness of the majority's approach to concede that every guess made might be correct. What matters is that the majority fails to base its opinion on what can be fairly drawn from the record (or, indeed, even on what can be fairly drawn from defense counsel's own account of his off-the-record telephone conversation with the trial judge).

This disregard of the record—and the corresponding reliance on speculations which are treated as facts—has serious jurisprudential implications. In our system, judges are supposed to play a limited role; they are required to rule on the facts of the case and controversy before them.

The interests preserved by limiting judges to the facts of a particular case are obviously un-

This court is not charged, moreover, with deciding abstract issues of how a trial judge should behave. This court must channel its inquiry through the accepted methods of raising legal issues. This normally requires the court to consider only those issues which were preserved by an objection below,[16] although in certain extraordinary cases the court can act to correct plain error.[17] The chief distinction between the majority and this dissent thus has little to do with whether the stipulation contained a hidden "condition."[18] It has to do with my reluctance to reverse this case on an issue that was never brought to the attention of the trial judge (because defense counsel never thought of it or relied on it), on an issue that was not briefed, and on a record that is far from clear.

### 1. Objection by Counsel

It is uncontested that Essex's counsel did object to "accepting a verdict from eleven jurors."[19]

dercut when judges rely on supposed situations not presented by the record. In recognition of this, courts have traditionally refused to rule when the record is unclear. *See, e.g., United States v. Blackwell,* 694 F.2d 1325, 1344 (D.C.Cir. 1982) (Robinson, J., concurring) ("It is an elemental and well-settled proposition that courts will not consider an issue first raised on a criminal appeal when the record is incomplete or lacks sufficient data to ensure sound resolution of the issue.").

**16.** Fed.R.Crim.Proc. 51.

**17.** Fed.R.Crim.Proc. 52.

**18.** Maj.Op. at 843 n. 15.

**19.** Government Brief at 7 n. 3. The entire text of the government's concession reads:

As explained in her brief, appellant's counsel, who was at an administrative hearing, communicated his objections to accepting a verdict from eleven jurors in a telephone conversation with the trial judge. Brief for Appellant at 7–8. The contents of that call are not a part of the record on appeal, but for the purposes of this appeal we credit appellant's representations that her counsel objected to accepting a verdict of less than twelve jurors. Just before the verdict was returned, appellant's counsel noted for the record his objection to accepting a verdict from eleven rather than twelve jurors (Tr. 397).

The majority asserts that this objection raised to the court the "just cause" issue. The majority reasons that this objection was "broad enough to raise the issue that the court erred by failing to find 'just cause.' " [20] The majority claims, "The objection was to the substantial variance from normal jury *procedure* in criminal trials that the court indicated it proposed to follow ...." [21] The majority then proceeds to read into the trial judge's action a response to the "just cause" issue. "In [overruling the defendant's objections] the court treated the stipulation to waive a jury of 12, *if necessary*, as sufficient to waive a jury of 12 even if *not necessary*." [22] The majority also finds that the government conceded away the "just cause" issue when it conceded that there had been an objection to continuing trial with eleven jurors. [23]

I fail to find in the record any evidence that trial counsel raised the "just cause" issue in its objection to the trial court. To the contrary, *all available evidence—including the record from trial, the factual assertions in the defendant's own brief, and the arguments advanced in the defendant's brief*—indicate rather clearly that Essex's trial counsel presented a *very different* argument to the trial judge. Nor does the government's simple concession that Essex's counsel objected to "accepting a verdict from eleven jurors" carry in its wake a concession concerning the "just cause" analysis advanced by the majority.

*The objection* actually raised by Essex's counsel—and pursued on appeal—can be simply put: he objected that *the stipulation applied only if a juror was dismissed during the taking of testimony* (which he erroneously described as the "trial") and not if a juror was excused during deliberations. He argued, in essence, that the stipulation was a substitute for the use of an alternate, and so expired of its own terms—never having been needed—when

an alternate could no longer be used. Because the expired stipulation was inapplicable during deliberations, Essex's attorney claimed, proceeding with only 11 jurors violated Essex's right to a jury of 12.

That this was the argument—and the *only* argument—actually made by the defense can be readily demonstrated. On the record, before the jury returned, Essex's attorney objected because, "It was not the defense's understanding that we would agree to go forward with only 11 jurors during the *deliberations*." [24]

In Essex's attorney's own recounting of his conversation with the trial judge's secretary, he states, "Counsel further expressed the opinion that the agreement concerning and the matter of the alternate juror was academic and moot at that point, since the alternate juror would have been excused before the jury had retired to begin its deliberations anyway, and would have had no part to play had a juror failed to appear to resume deliberations." [25] Again, the argument is that the stipulation simply did not apply after deliberations began.

Another hint emerges from the arguments advanced by Essex's attorney on appeal. *If*, as the majority suggests, the thrust of his objection was that the cause for the juror's absence was not proved, *it is at least very curious that he failed to address that issue directly in his appeal.*

The issue he did address was whether the stipulation had expired at the end of testimony—the identical issue he had raised in his telephone conversation with the trial judge and in his later formal motion to the trial court. In his framing of the issue presented, Essex's counsel asked this court to decide whether "trial court may accept a limited waiver of a twelve person jury during *trial* and ... transform

---

20. Maj.Op. at 842.

21. *Id.*

22. *Id.* at 842.

23. Maj.Op. at 836.

24. Trial Transcript at 397 (emphasis added).

25. Appellant's Brief at 7.

and apply it as a waiver of a twelve person jury during *deliberations....*" [26]

In Section I of his brief, appellant argued that the "conceptual difference between 'trial' and 'jury deliberations' has been persuasively established," and that the stipulation entered into by Essex did not apply at all during jury deliberations.[27] In Section II of the same brief, it is argued that "[t]he underlying premise of the 'waiver' was that it was given within the context comprehended by that portion of the trial in which alternates could be used (*i.e.*, prior to the time the jury retired.) It was not a waiver in a different set of circumstances in which alternates would not be allowed (*i.e.*, during deliberations). Indeed, the trial court's entire inquiry and instruction was couched in terms of the unavailability of alternates." [28] In Section III, Essex's counsel argues that the waiver was inapplicable after deliberations began because an alternate could not have been added to the jury.[29] In Section IV, the defendant's brief again asserted that Essex had never given "express permission and stipulation to the return of a verdict by fewer than the total number of jurors who retired to deliberate...." [30]

The argument actually expressed at trial and on appeal by Essex's counsel is clear: the stipulation was inapplicable because it expired altogether when the jury retired to deliberate.[31] Essex argues that she was, in effect, in the same position as someone who never had entered into a stipulation at all: no deviation from the standard requirement of a unanimous, 12 person jury could be taken without a new waiver.[32] The majority has rejected this argument,[33] and I certainly agree.

Although Essex's counsel stood by this interpretation of the waiver in his briefs and at oral argument, *the majority would credit him with a totally different objection:* that the stipulation did apply, that it did continue in force after the jury retired to deliberate, but that the judge failed to satisfy the terms of that stipulation. While the majority finds its interpretation to be the "substance" of Essex's objection, *the arguments are not only radically different but also inconsistent. Essex's counsel argued that the stipulation had ceased to be effective well before the missing juror failed to appear; the majority argues that the stipulation was still effec-*

**26.** *Id.* at vii (emphasis in the original).

**27.** *Id.* at 12–13.

**28.** *Id.* at 16.

**29.** *Id.* at 18–20.

**30.** *Id.* at 20–21.

**31.** This review of what Essex's counsel actually said helps place back in context certain phrases carelessly used by the majority. An example involves the word "necessary." The majority implies that this word was used by Essex's counsel in the same sense it uses the word: that the excusing of the juror was impermissible because it was not shown to be necessary. Maj.Op. at 836.

A careful reading of Essex's brief suggests that a different meaning was intended. The meaning apparently intended was that since no juror was excused before the end of testimony, it was not "necessary" to invoke the stipulation before it expired. Appellant's Brief at 6–7.

Another example is the trial judge's reported conclusion that she saw "no difference" in the situations posited by Essex's attorney. The majority concludes from this phrase that she reject-

ed Essex's objection to proceeding with 11 jurors "on the ground" that there was no difference in whether the juror's absence was proven necessary or not proven necessary. Maj.Op. at 836. If one must make assumptions, it certainly seems more reasonable to assume that the trial judge saw "no difference" in the two situations contrasted by Essex's attorney in his record statement below and throughout his brief on appeal: application of the stipulation to loss of a juror during the evidence taking phase of a trial, and application of the stipulation to loss of a juror during deliberations.

Finally, it places back into context the government's concession. The government does concede that Essex's attorney raised an objection to proceeding with 11 jurors. *But, far from conceding the "just cause" issue the government fails to indicate that it had any notice whatsoever that the "just cause" issue would blossom into a basis for disposition of the case.*

**32.** Essex's claim that a new waiver would be required explains her counsel's reference to the need for "a subsequent, requested waiver." Defendant's Brief at 8.

**33.** Maj.Op. at 839.

*tive but not adequately satisfied.* Under the argument advanced by Essex, establishing that the juror was excused for "just cause" would not avert a mistrial since there was no valid stipulation; under the majority's interpretation, establishing "just cause" on the record for discharging the juror would satisfy the implicit condition and allow trial to continue under the stipulation. Under the argument advanced by Essex, the proper course of action would not require consideration of why the juror was absent, because regardless of the cause of his absence a mistrial was required absent a new stipulation; under the argument advanced by the majority, establishing the cause for the juror's absence is the crux of the case.

Since the two courses of action requested of the judge are fundamentally inconsistent, it is not fair to say raising one argument also raises the other.[34] Once the judge had decided that the stipulation was still applicable, she had answered the objection raised by Essex. With regard to the objection raised by the majority, the judges were no more on notice than if no objection at all had been raised.

### 2. Plain Error

Essex's failure to make an objection could be overcome if the judge's action constituted plain error.[35] Although the majority asserts that the trial judge committed plain error, it fails to support its conclusion with reasoned analysis.

### a. The Just Cause Inquiry

First, it is not altogether clear that the judge would have committed error by simply finding the juror's absence alone just cause for dismissal. The court is handicapped in determining what would have constituted just cause for the juror's dismissal since this issue was neither briefed nor raised at oral argument. The government never had a chance to argue whether the present record is sufficient to support a finding that just cause did, in fact, exist to support the absent juror's dismissal.

The failure of the court to hear argument on this issue matters because it is at least arguable that the present record shows that just cause existed for the juror's dismissal. Under the rule governing stipulations to proceed with less than twelve jurors[36]—contrary to some suggestions in the majority's opinion—a judge assessing just cause is not a truant officer determining whether the juror has a good excuse for not appearing. A juror can, of course, be required to justify his absence, and the judge can impose sanctions on those jurors who fail to discharge their duties properly.[37] But, this case does not present the issue of whether the judge should have punished the missing juror.

The just cause issue faced by the trial judge in this case raises quite a different question—under what circumstances the parties to a stipulation can rely on that

**34.** As the majority correctly observes, the test for whether an objection is sufficient to embrace issues which are related but not mentioned in terms is whether the action requested of the judge is the same. Fed.R.Crim.Proc. 51.

Nor did Essex achieve the sort of "three in one" objection credited by the majority. While the majority, by stressing isolated phrases and even individual words, suggests a full array of objections, Maj.Op. at 836 n. 2, a more balanced reading of the record and briefs shows that Essex's counsel tenaciously pursued a single point. *See* note 30, *supra.*

**35.** Courts invoke the plain error doctrine cautiously and in exceptional circumstances, *United States v. Adams,* 634 F.2d 830, 836 (5th Cir. 1981); *United States v. Diez,* 515 F.2d 892, 896 (5th Cir.1975), *cert. den.,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976), in order to correct

obvious and substantial error, *United States v. Gerald,* 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). The error must be not only plain and obvious but also of a type that would significantly prejudice the defendant. *Reisman v. United States,* 409 F.2d 789, 791 (9th Cir.1969). *See generally,* C. Wright, Federal Practice and Procedure: Criminal 2d § 856 (1982).

**36.** Fed.R.Crim.Proc. 23(b).

**37.** Jurors are officers of the court, *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), and are subject to restraints like those that can be applied to attorneys, including contempt of court. *Id.* In addition, under some circumstances those preventing a juror from performing his duties can be charged with obstruction of justice.

stipulation, and continue trial without a member of the original jury panel.

The majority asserts that juror's absence must be "justifiable,"[38] an issue which, as shown above, the government never had the opportunity to meet. The majority's reasoning leads to the consequence that if a juror's absence was for a "bad" cause, the rule forbids the court to excuse the juror. Trial must be continued with the juror, or not at all. For all practical purposes, this means that stipulations are useless nullities.[39]

The majority's approach to just cause contains at least two critical flaws. First, it promises to transform a rule that was designed to avoid mistrials into a fertile and treacherous source of mistrials. If the court—with the unwitting acquiescence of the parties—continues trial after a juror "unjustifiably" fails to appear, the appellate court must set aside the verdict. Secondly, it flies in the face of the case law. Judges have excused jurors for such unjustifiable reasons as sleeping through a part of the trial,[40] or simply disappearing after a break in the proceedings.[41]

The majority's approach would undercut the purpose served by stipulations—allowing parties to know that trial can continue despite the absence of a member of the original jury panel. A more sensible approach would be to allow judges and parties to rely on stipulations and dismiss a juror whenever the needs of the court would be served by proceeding under a stipulation.[42] Stipulations are intended to avoid controversy, and to reduce the necessary labors of court and counsel. The

**38.** Maj.Op. at 844.

**39.** The majority leaves open the possibility that the parties can waive the just cause requirement. Maj.Op. at 840 n. 11. In raising the possibility that the just cause requirement could never be waived the majority makes the daring intellectual leap of imagining a situation where a recalcitrant juror, failing to appear for no good cause, could frustrate the desire of all parties and the court to continue trial. This line of reasoning would give to a juror an inalienable right to create a mistrial.

Even if the just cause requirement could be waived, problems would still ensue. The present case at least suggests one category of problematical cases: the parties fail to realize that the juror's absence was not for just cause, and so continue trial under the original stipulation. If an appellate court followed today's majority in deciding *sua sponte* on appeal that the juror's absence was not justified, a mistrial would be required. The moral is that the parties are better off when the juror's absence clearly is unjustified, for at least then they could agree to a second waiver, whereas they might be lulled into relying on the first stipulation if they thought the juror's absence was justified.

**40.** *United States v. Roby,* 592 F.2d 406 (8th Cir. 1979), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2888, 61 L.Ed.2d 314 (1979).

**41.** *Fowler v. Hunter,* 164 F.2d 668 (10th Cir. 1947), *cert. denied,* 333 U.S. 868, 68 S.Ct. 785, 92 L.Ed. 1146 (1948). This case obviously predated the rule at issue here.

**42.** As the previous cited cases indicate, this has in fact been the approach of the courts, perhaps because the closely related rule governing the discharge of jurors where alternates are to be used asks whether the court finds it necessary to excuse a juror. This approach makes sense, because it does not punish the parties simply because a juror has acted wrongfully.

Nor must the judge *sua sponte* establish the cause for the juror's absence in the ordinary case. In some exceptional cases, the judge should affirmatively ensure that the juror's absence did not occur for a reason that would violate the Constitution. For example, the judge arguably should always establish in a death penalty case that a juror did not excuse himself because he believed that the death penalty should not be applied on the facts of a particular case. *Green v. Zant,* 715 F.2d 551 (11th Cir.1983). In some other cases, an argument could be made that excusing a juror after deliberations have begun runs the risk of violating the unanimous verdict requirement of Rule 31(a). This argument—which was not even raised by appellant on appeal—would fail on the facts of this case. First, the jury deliberated for a reasonable amount of time after the juror was excused, which arguably cures any lack of unanimity defect. *See United States v. Vega,* 447 F.2d 698 (2d Cir.1071), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972). Secondly, it is entirely possible that the judge did ensure that the juror was not absent for impermissible reasons.

In the ordinary case, the court need only have a "sound basis" for exercising its broad discretion. Cases specifically addressing whether a juror should have been excused under a stipulation are rare, but many cases have faced the closely related question of whether a juror should be excused and an alternate seated. The courts traditionally have found this sound basis

judge knew she had a stipulation with counsel, in the record, accompanied by interrogation of the defendant herself, and—faced with a choice between two undesirable prospects, delay of trial or proceeding with one less juror—the court properly should have relied on the defendant's stipulation, and so she did. Doing so was merely giving the defendant the benefit of her bargain.[43]

### b. The "Error" of Failing to Find Just Cause

The majority opinion ultimately cannot rest on a refusal or failure by the trial judge to establish "just cause." The record shows only no *record* finding was made.[44] An opinion properly limited to the record must turn on whether the failure to make a record finding by itself constitutes error.[45]

The majority takes an audacious step in arguing that silence of the record alone constitutes error. The right at stake here is not constitutional, nor is it statutory. It is a right created by a federal rule of procedure.[46] Yet, the majority holds that this rule-created right is so momentous that the court's failure to show affirmative-

---

in unsupported claims of illness, inability to travel safely to the courthouse, or other conflicts. *United States v. Shelton*, 669 F.2d 446 (7th Cir.), *cert. denied sub nom. Bledsoe v. United States*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982) (juror telephoned to say that she was ill); *United States v. Dumas*, 658 F.2d 411 (5th Cir.1981), *cert. denied*, 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982) (juror excused at employer's request); *Rogers v. United States*, 319 F.2d 5, 7 (7th Cir.1963), *cert. denied*, 375 U.S. 989, 84 S.Ct. 524, 11 L.Ed.2d 475 (1964) (snowbound juror telephoned), *see generally*, Note, Federal Rules of Criminal Procedure 23(b) and 24(c): A Proposal to Reduce Mistrials Due to Incapacitated Jurors, 31 Am.U.L.Rev. 651, 655 n. 36 (1982). Pursuing the majority's logic to its logical conclusion, the judges in these cases should have affirmatively established that the juror's stated excuse was true.

In some cases, the inconvenience caused the court by the juror's unexplained absence has been enough to justify dismissal without further inquiry. *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir.1978) ("When a juror is absent from a court for a period sufficiently long to interfere with the reasonable dispatch of business there may be a 'sound' basis for his dismissal."). *See also United States v. Peters*, 617 F.2d 503 (7th Cir.1980) (Discharge of juror for being 10 minutes late upheld even where no telephone inquiry was made as to juror's whereabouts); *United States v. Domenech*, 476 F.2d 1229, 1232 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973) (juror excused for being 10 minutes late to courtroom; judge made no inquiries into juror's whereabouts). The "good cause" inquiry might change when alternates are not available, or when deliberations have begun, but the majority fails to offer district judges any guidance whatsoever as to what constitutes "good cause" under any circumstances.

**43.** The majority fails to cite a single case where a conviction was overturned because the judge failed to establish on the record whether there

was a just cause for a juror's dismissal. Even if the majority's approach were correct, the utter novelty of its approach should weigh against holding that the judge committed plain error by failing to anticipate this court's reasoning. *See United States v. Blackwell*, 694 F.2d 1325, 1342 (D.C.Cir.1982) (Wald, J.) ("[T]he lack of prior precedent in the circuit and the novelty of the issue presented militate against calling the judge's mistake plain error.").

**44.** The majority does attempt to finesse the silence of the record by overstating the breadth of the "concession" made by the government. The government did concede that Essex's attorney objected to continuing trial with only 11 jurors; nowhere, however, did the government concede that the "just cause" issue was raised to the trial judge. *See* n. 31, *supra*. The majority's tortured reading of the government's concession can carry only one message to trial counsel: concede nothing, lest your modest concession metamorphose into a general admission.

**45.** The majority attempts to address this problem by asserting that the use of the verb "find" in Rule 23 requires a formal finding on the record. Maj.Op. at 846 n. 17. American courts have long held, in analogous circumstances, that such use of the verb "find" does not require a formal finding in the record. *See, e.g., State v. City of Beloit*, 74 Wis. 267, 42 N.W. 110 (1889); *Clairol, Inc. v. Andrea Dumon, Inc.*, 14 Ill. App.3d 641, 303 N.E.2d 177, 182 (1973).

**46.** In an apparent attempt to create a Constitutional basis for its holding, the majority holds that "the appellant's right to a unanimous jury was violated." Maj.Op. at 839. This argument was never raised by the parties. Aside from general references to Essex's right to a unanimous verdict of 12 jurors, there is not even a reference that can be extrapolated: there is no mention of Rule 31 of the Federal Rules of Criminal Procedure, which establishes the right

ly that it was not violated is by itself reversible error of the most plain and egregious kind. This is jurisprudence at its pettifogging and hypertechnical worst. This style of reasoning went out of fashion with the Year Books.

The implications of the majority's reasoning are staggering. Since the "substantial rights" identified by the majority appear to derive solely from the Rules of Criminal Procedure, it must be assumed that similar "substantial rights" lurk in other federal rules. Under today's ruling, courts must affirmatively place in the record that they performed all functions required by the rules in a lawsuit, even absent any sort of

challenge. To fail to make such a record finding, the majority holds, is error so clear and fundamental as to require reversal.

### c. Lack of Prejudice

Even if the majority were correct in asserting that the judge erred, it fails to show how that error prejudiced Essex. Proof of the deprivation of a fundamental right is essential to the majority's line of reasoning.[47]

It is logically impossible to show on the current record that Essex was prejudiced in any way at all by the judge's failure to make a record finding of just cause.[48] On

to a unanimous verdict; there is no discussion of the relevant cases (although one case, *United States v. Vega,* 447 F.2d 698 (2d Cir.1971), *cert. den.,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972), is string cited for the proposition that Rule 24(c) waivers do not extend past the beginning of deliberations); and there is no discussion of how the 11–0 verdict might have violated unanimity. Because this issue was never addressed by the parties—and because the facts necessary for its proper resolution have not been included in the record on appeal—I feel that this court oversteps its bounds in addressing it.

If the issue is to be broached, however, it deserves a more thorough analysis than the majority gives it. The majority makes three assertions with which I agree: Rule 31 requires federal jury verdicts to be unanimous; Essex never waived her right to a unanimous verdict; and in some very rare cases the dismissal of a juror during deliberations can amount to the acceptance of a non-unanimous verdict. *What the majority fails to address at all is the difficult nub of the issue: whether the 11–0 verdict in this case—especially since there is no evidence at all that the dismissed juror was a holdout—violates the right to a unanimous verdict.*

The majority's ignoring that the ultimate verdict was unanimous is all the more curious because the majority earlier recognizes "a distinction between ... a *jury of 12,* and ... *unanimity.*" Maj.Op. at 840. The majority cites two cases in support of this proposition, *United States v. Pachay,* 711 F.2d 488, 492 (2d Cir. 1983), and *United States v. Vega,* 447 F.2d 698, 701 (2d Cir.1971), *cert. den.,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972). In *Vega,* a juror identified as a hold-out was excused in order to avoid a mistrial. The jury deliberated a short time longer, and a verdict of guilty was returned. The appeals court upheld the verdict, despite the appellant's claim that the verdict lacked unanimity. In *Pachay,* the Second Circuit affirmed the distinction between waiving a

unanimous verdict and waiving a jury of 12, even while recognizing that in some cases more extreme than *Vega* excusing a juror identified as a hold-out would be tantamount to accepting a non-unanimous verdict.

If this court were to apply the Second Circuit's approach, it seems clear that—even assuming the "worst possible" case presented by the majority—the action of the trial court would not violate any right to a unanimous verdict. In *Vega,* the juror was excused *because* of being a hold-out. That did not violate unanimity. In this case, there is a sliver of a chance that the missing juror was a holdout. If there is no violation of unanimity when there is a *certainty* that a juror is a hold-out, I fail to see why there is a violation of unanimity when there is a *mere chance* that the juror is a hold-out, (especially since here, as in *Vega,* the dismissal was pursuant to a valid stipulation, and the jury continued to deliberate before reaching a verdict).

47. *United States v. Hensel,* 711 F.2d 1000 (11th Cir.1983) (no plain error where defendant was not prejudiced); *United States v. Lopez,* 575 F.2d 681 (9th Cir.1978) (no reversal where error is harmless).

48. The majority holds—quite correctly—that when the record shows that improper advances have been made to jurors or that inappropriate persons have been injected into the jury's deliberations, it need not be proven that the jurors' thought processes were altered. Maj.Op. at 845.

That is a far cry, however, from the facts of this case. There has been no showing on the record that "something happened;" indeed, there has been no showing at all either that the missing juror was not absent for good cause or that the missing juror was a holdout for acquittal. The majority's assertion that prejudice need not be shown here logically extends to all allegations concerning the jury. Following the major-

the record before us, it cannot be said that Essex was prejudiced by any failure to establish just cause—because for all we know the judge did establish, and establish correctly, that the juror must be excused. Nor, for exactly the same reason, can we say that Essex was prejudiced by any invocation of the stipulation without first fulfilling some presumed "condition precedent"—because for all we know the judge did fulfill the supposed condition precedent by establishing just cause.[49] Finally, we cannot say that Essex was prejudiced by having her case resolved by 11 jurors instead of 12—she had agreed to accept a verdict of 11, and nothing in the record shows that her waiver was inapplicable.

All that can be deduced with certainty from the present record is that the judge made no record finding as to just cause. The majority finds this silent record to be not only error, but plain error, and not only plain error, but plain error which prejudicially compromised the fairness of Essex's trial. The error of the majority's approach can be underscored with one simple observation: the majority cannot say what the judge here did, but they nonetheless conclude that she plainly did it wrong.

Given the silence of the record, the majority's opinion establishes a presumption: when the trial judge fails to establish *sua*

*sponte* that a rule was obeyed, this court may assume that the rule was disobeyed.

The usual rule, I would have thought, was just the opposite: a court can assume that the trial judge properly applied the rules unless the record shows she erred. On the facts of this case, then, one would expect that the trial judge established that it was "necessary for just cause" before she proceeded to dismiss the absent juror.

The critical inquiry, which the majority completely ignores, is thus not whether the error was "plain" or substantial. The initial inquiry is whether *any error at all* appears on the record.[50] My disagreement with the majority's reading of the plain error rule can be simply put. The plain error rule applies only to errors which are "obvious." It does not apply to errors which only might have happened. On this record, we see only silence. Thus, we have no error, unless silence itself is cause for reversal.[51]

The court's action here adds new dimensions to the term "prejudice" and breaks new ground in the willingness of courts to set aside otherwise valid jury verdicts on hyper-technical grounds. The majority would set aside a conviction simply because the trial judge failed to speak the incantation "just cause" before excusing the absent juror.[52]

ity's logic, it can be argued on appeal that a jury verdict should be set aside because a juror might have read or seen a news account concerning the trial, even absent any proof that a news account was ever published. Apparently, for the majority the mere allegation that "fundamental jury procedures" might have been violated suffices to substitute for prejudice.

**49.** This is not to concede that there was a condition precedent—only that if there was a condition precedent, there is no record evidence establishing that it was not fulfilled.

**50.** I thus do not dispute the well-settled—but, on this record, irrelevant—proposition that courts can respond to errors plainly apparent on the record when those errors effect substantial rights. *See* Fed.R.Crim.Proc. 52. The point remains, however, that even though the plain error rule represents a limited exception to the adversary system normally relied upon in American trials, it does not support a disregard of the

requirement that the courts be limited to the facts of the case.

**51.** The majority observes that the absence of a bench warrant gives evidence that no search was attempted. Even if this is true it ultimately proves nothing, since the reason for not attempting a search might well have been that the trial judge knew where the juror was and why *the juror was absent.*

**52.** This case is fundamentally different from the situation possible under the newly enacted version of Rule 23(b) under which the judge can accept a verdict of less than twelve without the defendant's consent. Here, the defendant prospectively made her own choice: she preferred a verdict of less than twelve to delay or a mistrial. Under the new rule, the judge can make that choice for the defendant. Under the new rule, because it is the judge who chooses, the judge should carefully consider all proposed alternatives to proceeding with less than 12 and, if challenged, justify the choice made.

The majority's logical legerdemain in conjuring error from pure silence is all the more remarkable because the silence of the record can be easily explained. Trial judges in the course of a trial must make countless rulings, many of which are implicit and need not be stated on the record. This was just such a ruling. The judge apparently assumed—*as all parties to this case apparently assumed—that the cause for the juror's absence was not at issue.* It would have been a pointless and futile exercise for the judge to make and justify a record ruling on a point no one contested.

### III. CONCLUSION

The real dispute in this case is not about how trial courts ought to proceed. The dispute is about how appellate courts ought to proceed. The appellant raised one issue to the trial court. The trial court correctly disposed of that issue. That issue, and only that issue, was pursued on appeal. The majority, like the trial court, has ruled that issue not to be meritorious.

Despite its resolution of the issue actually raised, the majority has rested upon another issue: whether the lack of a record finding as to the cause for the juror's dismissal violated the requirement that jury trials be unanimous. The "just cause" branch of this argument was essentially raised from the bench at oral argument, elaborating on a throwaway footnote in appellant's brief; the "unanimity" branch of the argument was nowhere debated before the court retired to chambers with this case. The court thus raised to itself the issue it finds determinative.

Because of the majority's choice to decide the case on an issue that was not argued or briefed this case has taken on a somewhat bizarre cast. The majority has labored mightily—if unsuccessfully—to derive by exegesis the arguments appellant's counsel never made. It similarly has conjured from a silent record—a record silent presumably because the parties saw no need to supplement the record so that the "just cause" argument could be reached—

an impressive array of "facts" that it finds lurking in the record.

The double-barrelled overreaching compounds the dangers inherent in the majority's approach. Because the majority has strained to conform both the legal arguments and the factual record to its own conception of the case, neither the facts nor the parties' arguments can serve as a check: because the legal issues were never previously raised, the facts which might have shown whether they were apt never surfaced; because the record is unclear, it cannot be stated with certainty whether the legal arguments are on point.

Having performed these Herculean efforts to restructure the case, the majority draws some conclusions that—if not apropos—are nonetheless inoffensive in themselves. Judges should know why jurors fail to reappear. The terms of stipulations should be honored. The law does require unanimous verdicts.

My dispute is not with these principles. It is with the process. In deciding issues that really were not raised, in relying on facts that really are not clear, this court abandons the structured decision-making process on which our courts rest. I simply argue that this does not, and cannot, promote basic justice—so long as justice, as Cardozo urged, is construed to include fairness to the accuser as well as to the accused.

For the foregoing reasons, I respectfully dissent.