85 F.3d 629
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrell Gene FORD, Defendant-Appellant.
 No. 94-6196.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1996.
 
 Before: MARTIN and MOORE, Circuit Judges, and JOINER, District Judge.*
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Darrell Gene Ford appeals his convictions for possession of methamphetamine with intent to distribute and asserts several evidentiary errors at his trial. We affirm.
 
 
 2
 * On September 7, 1993, a Kentucky grand jury indicted Darrell Gene Ford on two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). At trial, the prosecution called Greg Cox, a Kentucky police officer who had been involved in undercover drug purchases from Ford, and Bradley Wickersham, and FBI agent who, together with Cox, had at one point questioned Ford at his home. The prosecution also called Timothy Miller, who testified that he had purchased drugs from Ford on several occasions.
 
 
 3
 Testimony from a number of witnesses, both for the defense and for the prosecution, focused on Ford's relationship with Doug Priest, a reputed "drug kingpin" turned government informant, who did not appear at trial. The defense attempted to show that Priest and Miller had coerced Ford into selling drugs by threatening his physical safety. The jury nevertheless found Ford guilty on both counts. This appeal followed.
 
 II
 
 4
 Ford's first assignment of error deals with the prosecution's use at trial of statements that he made when questioned by Cox and Wickersham at his home prior to his arrest. He argues that these statements were inadmissible under Miranda v. Arizona, 384 U.S. 436, 444 (1966), which held that the Fifth Amendment right against self-incrimination requires law enforcement officials to inform individuals of their right to remain silent and right to an attorney before subjecting them to a custodial interrogation. The government admits that Cox and Wickersham gave Ford no Miranda warnings before they questioned him.
 
 
 5
 Ford did not raise the Miranda claim below. He nonetheless urges us to address this issue, arguing that United States v. Olano, 507 U.S. 725 (1993), and Federal Rule of Criminal Procedure 52(b) allow us to review the district court's actions for plain error. Precedent of this court has held, however, that under Olano "[c]onstitutional objections 'that appear for the first time on appeal are conclusively deemed to be waived, with the effect that [the appellate court is] deprived of jurisdiction.' " United States v. Scarborough, 43 F.3d 1021, 1025 (6th Cir.1994) (quoting United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990)) (alteration in original). Appellate consideration of Ford's claim is especially inadvisable because the district court had no opportunity or reason to make the factual findings necessary to determine whether Ford's questioning was in fact a custodial interrogation. The Miranda issue is therefore unfit for review.
 
 III
 
 6
 Ford next claims that the court erred in admitting hearsay testimony. We review de novo a district court's determination whether proferred evidence is inadmissible hearsay. United States v. Fountain, 2 F.3d 656, 668 (6th Cir.), cert. denied, 114 S.Ct. 608 (1993). The alleged hearsay in this case consisted of Cox's testimony that he received a telephone call from Priest, met Priest, and went with him to Ford's house with the understanding that a drug sale was to take place there. Ford contends that this testimony constituted inadmissible hearsay because the clear implication was that "Doug Priest had told Detective Cox on the phone that Darrell Ford was to be involved in a drug transaction." Appellant's Br. at 12; see also Appellant's Reply Br. at 2 ("In the present case, Detective Cox may not have said, 'Doug Priest told me that Ford and Priest had set up a drug transaction,' but the jury was left with exactly that impression."); United States v. Reyes, 18 F.3d 65, 69 (2d Cir.1994) (holding that testimony can constitute hearsay if it conveys substance of out-of-court statements).
 
 
 7
 This argument fails for three reasons. First, to the extent that the jury inferred that Priest had told Cox about the planned drug sale, that information was admissible as an explanation for Cox's presence at Ford's home, rather than as proof that Ford was involved in the transaction. "The hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer." United States v. Martin, 897 F.2d 1368, 1371 (6th Cir.1990); see also Fed.R.Evid. 801(c) (defining hearsay as out-of-court statement "offered in evidence to prove the truth of the matter asserted"). Second, Ford's own counsel had previously elicited testimony from Cox regarding the sale. The jurors therefore already had good reason to believe that Ford was involved in the transaction--in fact, the defense made no effort to hide the fact that the meeting at Ford's home involved a drug deal between Priest and Ford. The impact, if any, of the alleged hearsay was therefore negligible and would constitute harmless error at most. Third, Ford himself had stated in Cox's presence that the visit to Ford's house involved a planned drug transaction: Cox overheard Ford discussing the deal with Priest, and Ford later independently told Cox about the encounter. Cox's knowledge of the nature of the visit to Ford's house therefore derived from statements that Ford himself made, and a witness may offer a party's statements against the party without raising hearsay concerns. See Fed.R.Evid. 801(d)(2)(A).
 
 IV
 
 8
 Last, Ford argues that the district court violated Federal Rule of Evidence 404 by allowing Cox and Miller to testify regarding drug transactions that were not the subject of either count of the indictment. Rule 404(b) specifically prohibits the use of character evidence of "other crimes, wrongs, or acts" to prove that a defendant acted in conformity therewith. Review of a district court's ruling on such "other acts" evidence involves a three-step process: (1) the decision that the "other act" occurred is reviewed for clear error, (2) the decision that the evidence of the "other act" was admissible for a legitimate purpose is reviewed de novo, and (3) the decision that the evidence was not substantially more prejudicial than probative under Federal Rule of Evidence 403 is reviewed for abuse of discretion. United States v. Gessa, 971 F.2d 1257, 1261-62 (6th Cir.1992) (en banc).
 
 
 9
 The district court did not err in deciding that the evidence was sufficient to show that the "other acts" occurred. Each witness was present at the transaction about which he testified, and statements Ford later made to police corroborated Cox's eyewitness account of one of the drug deals. This evidence sufficed "to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. 681, 685 (1988).
 
 
 10
 The district court also correctly determined that the "other acts" evidence was admissible for a legitimate purpose. The prosecution offered Cox's testimony regarding the drug transaction for two purposes, neither of which implicates Rule 404(b)'s restrictions. First, the defense had pursued its duress defense on cross-examination of Cox by eliciting testimony regarding a threat that Priest had made to Ford. Cox's "other acts" testimony was no more than the prosecution's attempt on redirect to show that the threat in question had occurred after the incidents charged in the indictment.
 
 
 11
 Q When, sir, in time did you overhear this [threat] in relation to the last--your last purchase from Darrell Ford that is charged in this case?
 
 
 12
 A It was about a week later.
 
 
 13
 Trial Tr. at 150-51. This evidence was therefore admissible as proof that Priest's threat could not have prompted Ford to commit the crimes charged in the indictment.
 
 
 14
 Second, the prosecution offered Cox's testimony to show that Ford had initiated a drug transaction with Priest. Cox specifically stated that Ford had been the one to offer to supply methamphetamine to Priest. This evidence tended to rebut the defense's theory that fear motivated Ford; if Ford got involved in the previous drug deals only to protect himself, why would he later volunteer to supply drugs to the very individual who had threatened him? Again, the evidence was intended to show the jury that Ford's motive or intent was not what the defense would have it believe.[1] In any event, the defense "opened the door" to Cox's testimony when it raised the issue of the planned transaction during cross-examination of Cox. See United States v. Segines, 17 F.3d 847, 856 (6th Cir.1994) (admitting theretofore inadmissible evidence after defense broached topic on cross-examination); United States v. Ramos, 861 F.2d 461, 467-69 (6th Cir.1988) (same), cert. denied, 489 U.S. 1071 (1989).
 
 
 15
 The same rationale applies to Miller's testimony. The prosecution did not question Miller regarding Ford's drug sales until after Ford had presented his duress defense. Although the defense did not "open the door" to Miller's testimony, evidence of drug transactions for which Ford could provide no duress excuse was admissible to show that Ford did in fact participate in drug deals of his own free will.
 
 
 16
 Finally, the district court did not abuse its discretion in deciding that the potential prejudicial impact of the "other acts" evidence did not substantially outweigh its probative value. See Fed.R.Evid. 403. Given the duress defense to count two of the indictment, evidence of willing drug dealing on Ford's part was important rebuttal evidence. Furthermore, the district judge gave thorough cautionary admonitions both during the witnesses' testimony and in its jury instructions. See Johnson, 27 F.3d at 1193 (noting importance of cautionary instructions on "other acts" evidence).
 
 
 17
 In conclusion, all of Ford's challenges to the district court's evidentiary rulings are meritless. We therefore AFFIRM Ford's convictions.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Although the drug deal about which Cox testified was never completed, the prosecution was careful to ensure that the jury knew this fact--far more careful than was the defense